[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Liberty Mutual Insurance Company (hereinafter Liberty) brought this action pursuant to its subrogation agreement with Claudia Gallego, to recover money it paid to Gallego for damages to her vehicle and associated towing and rental costs. In addition Liberty seeks $500 on behalf of Gallego which was the amount of her deductible. The total claim is $5666.66.
Gallego and Shawn LaPointe were involved in an automobile accident on or about February 17, 1995 at the intersection of Buff Cap Road and Old Stafford Road in the town of Tolland. CT Page 1900
LaPointe sued Gallego for personal injuries, and in a separate action Liberty sued LaPointe pursuant to its subrogation agreement with Gallego. The two cases were ordered consolidated on July 29, 1996.
The personal injury case (LaPointe v. Gallego) was settled for $100,000. which was paid by Liberty. A withdrawal of action was then filed by Gallego which withdrew her action against the defendants LaPointe only. (The withdrawal was signed by the attorney for the Gallegos). Neither party submitted releases at the trial of this case.
The first issue to be decided is whether the settlement of LaPointe's personal injury suit and the withdrawal signed by Gallego's attorney constituted a waiver of Liberty's subrogation action for property damage to the Gallego vehicle.
The defendant argues there was an implied waiver by Liberty when it settled LaPointe's personal injury claim against Gallego. The Court does not agree for the following reasons.
Liberty was not a party in the settled case, nor did that case involve a claim for property damage or payments made pursuant to Liberty's subrogation agreement with its insured.
Because this issue was raised by special defense it is the defendant's burden to prove Liberty waived its rights either expressly or impliedly. Clearly there was not an express waiver, that is an intentional relinquishing of one's rights. Fisette v. DiPietro, 28 Conn. App. 379,385 (1992) and cases cited therein. Because Liberty was not a party in the settled case and the claims are different the defendant has not established a waiver by inference or implication.
We now turn to the issue of damages and necessary findings. There was conflicting testimony from the drivers involved in this accident. It is, of course, the Court's obligation to determine the credibility of the testimony and to draw therefrom an assessment of reliability by a fair preponderance of all the evidence.
Shawn LaPointe testified that she approached the "T" intersection of Buff Cap Road and Old Stafford Road, that she stopped at the stop sign at said intersection, looked to her left, then to her right and then again to her left, that she saw no traffic and proceeded into the intersection to make a left turn onto Old Stafford Road. (Old Stafford Road was a through street with no stop sign or traffic light); that when partly CT Page 1901 through the intersection, she saw the Gallego vehicle approaching, and she speeded up in order to be completely in her travel lane and avoid contact. At that point the Gallego vehicle had moved into her travel lane and there was essentially a head on or near head on collision. She estimated the Gallego vehicle was traveling approximately 50 miles per hour in a 30 mile per hour zone.
On the other hand, Claudia Gallego testified that she was traveling in a southerly direction on Old Stafford Road; saw the LaPointe vehicle at the intersection; saw LaPointe look to her right and then pull out right in front of her; that she hit her brakes and veered into the northbound lane of Old Stafford Road in an effort to avoid a collision but at the same time LaPointe speeded up and the collision then occurred.
The Court does not find that the speed of the Gallego vehicle was a contributing factor to this accident. LaPointe's estimate of speed was based on a brief split-second look when she was well into the intersection. Gallego was on her way to pick her husband up at work and was not running late. Her testimony that LaPointe pulled out in front of her is credible.
Our stop sign statute, Connecticut General Statutes § 14-301 (c) provides in relevant part:
 "that the driver of a vehicle shall stop in obedience to a stop sign at such clearly marked stop line . . . and shall yield the right of way to vehicles not so obliged to stop which are within the intersection or approaching so closely as to constitute an immediate hazard."
The defendant knew the line of sight at that intersection made it difficult to see vehicles approaching from the north. The Court finds she was negligent in failing to yield to the Gallego's vehicle as required by Connecticut General Statutes § 14-301 (c), and negligent in not keeping a proper lookout for vehicles approaching the intersection.
While the Court concludes the defendant was primarily responsible for the damages, Claudia Gallegos was herself negligent. On seeing LaPointe entering the intersection crossing her travel lane to turn left, a more appropriate reaction would have been to veer to the right to minimize the impact of any collision. By veering left the vehicles came head on which maximized the damage. CT Page 1902
Accordingly, the Court enters the judgment as follows:
 Total damages $5666.66 Defendant's responsibility 65% Responsibility of Plaintiff's insured 35%
 Judgment for the plaintiff $3683.33 plus costs
Klaczak, J.